This certifies that this is the opinion of the Appellate Division in this cause.

Suzanne Hurley
Clerk, Appellate Division

DINING AND KITCHEN
ADMINISTRATION, INC.
d/b/a DAKA
vs.
COMMISSIONER OF REVENUE

No. 99601

Appellate Tax Board
Commonwealth of Massachusetts

March 4, 1983

John E. Coyne, Esq., for the Appellant.
Joseph L. Hachey, Jr., Esq., for the Appellee.

FINDINGS OF FACT AND REPORT

The appellant, with offices in Wakefield, Massachusetts, is a food service contractor. It provided meals to students in a cafeteria at the Worcester State College.

On February 6, 1976, the appellee notified the appellant of the appellee's in-

tention to assess a deficiency of meal excises for the period September, October, November and December, 1975, in certain specific amounts which with interest totaled $3,622.80. Actual assessment was by the appellee on October 31, 1976 and the appellant filed applications for abatement on April 10, 1978. The applications having been denied on April 26, 1978, the appellant filed a timely appeal with this board on June 23, 1978.

Known as the "Concessionaire's Agreement", the contract under date of May 21, 1974 between the appellant and the college provided in part:

Article I

"a. That, for a period of two years from the date first written above . . . unless sooner terminated or revoked . . . the COLLEGE grants to the CONCESSIONAIRE a concession to operate: One Cafeteria Style Dining Hall located at the state college at Worcester . . . which are to be the **sole regular food and vending** services at Worcester State College for the term of this contract, . . ."

Under other provisions of the contract, the college was to furnish the space and the necessary utilities and the concessionaire paid $50 a month for the utilities. The college provided the concessionaire "with an equipped dining room, food service and kitchen areas, including an adequate opening inventory of china, being glassware and silverware and ready to operate, . . ."

The college furnished building maintenance but the concessionaire had to maintain in operation at all times and assume the cost of professional maintenance and repair service contracts for all mechanical, electrical and gas-operated equipmment. There were extensive other provisions governing the relationship beween all the parties and including various food plans and the costs thereof.

The issue in this case involved only the sale of meals to resident dormitory students under a contract food plan.* Three meals a day for five days a week were served to the dormitory students on presentation of a card issued by the college. Payment for the meals was made to the appellant upon a billing, a typical example of which is Exhibit C, which is for a ten-meal plan. The bill was mailed by the college and the college received a percentage of the receipts from the meals. Purchase of the meals was mandatory for all freshman.

The appellee stressed in its evidence certain provisions of Exhibit C and Exhibit #7.

Exhibit C, a typical bill, included the following heading and statement:

"WORCESTER STATE COLLEGE
FOOD SERVICE
DINING AND KITCHEN
ADMINISTRATION, INC.

Please remit this bill and your check payable to daka, 5 Lakeside Office Park, Wakefield, Mass."

The "Concessionaire's Agreement", Exhibit 7, provided in part:

"ARTICLE II:

The concessionaire, in consideration of this grant and the services and functions provided by the college undertakes and agrees as follows:

a.)- - - - - -

- - - - - -

(g) Not to represent himself or permit himself to be represented by the public as an agent of the COLLEGE and/or COMMONWEALTH OF MASSACHUSETTS by use of the COLLEGE'S name on letter, billheads, signs or in any other manner . . .

(q.) To provide, at his own expense, Workmen's Compensation Insurance, Public Liability Insurance, Property Damage Insurance and Insurance against loss by fire, theft or explosion, caused by the negligence of any of his exployees, to such fixtures and equipment as are in his cusory (sic) . . ."

---

*The parties agreed, at the hearing, that cash sales of food and meals had been properly reported and taxed.

The said agreement also provides:
"ARTICLE III
a. 1. The CONCESSIONAIRE will provide an optional Ten (10) meal contract food plan consisting of Five (5) Lunches and Five (5) Dinners, Monday through Friday, for resident students of the COLLEGE. For the resident food contract plan, the COLLEGE agrees that the CONCESSIONAIRE may bill the student at the rate of **$202.50** per semester for the academic year 1974-75. The CONCESSIONAIRE will sell weekly Five (5) meal tickets consisting of Five (5) dinners to those students who do not purchase the Five (5) day contract food plan for $12.50 a week for the academic year 1974-75.

a. 2. Costs of the Ten (10 Meal contract food plan for academic year 1975-76 will be negotiated on or before January 1, 1975. The feasibility of adding a mandatory meal plan for Worcester State College students for academic year 1975-76 will be opened for discussion at the same time (January 1, 1975) by the CONCESSIONAIRE and the COLLEGE.

b. 1. The COLLEGE shall furnish the CONCESSIONAIRE with a list of resident students and will permit the CONCESSIONAIRE to simultaneously mail its bill for board with the COLLEGE'S billing for residence hall accommodations. The CONCESSIONAIRE will be responsible for the collection of all contract meal income, and will serve food only to those students paid in advance. The CONCESSIONAIRE will adopt the reimbursement policy of the COLLEGE for the reimbursement of funds paid in advance for students who leave the State College at Worcester.

b. 2. Students on the board plan who receive financial aid must present authorization from the Director of Financial Aid that his office will be responsible for the board bill.

c. 1. The CONCESSIONAIRE will pay to the COLLEGE commission on the total sales of the concession which include all cafeteria cash sales, contract income, vending, and functions, in accordance with the following schedule:

Contract Students — 2% of the gross amount

Cash Sales — 5% of the gross amount . . ."

The appellants introduced into evidence as Exhibit 8 an agreement for dismissal of appeal filed in the case of **Walter Flynn, et al,** Plaintiffs-Appellees v. **Laurence Fitzmaurice, Commissioner of Corporations and Taxation, et al,** Defendants-Appellants, Appeals Court, Suffolk County No. A.C. 77-831.

In the **Flynn** case, the Commissioner of Corporations & Taxation (now Revenue) assessed a tax against the Trustees of Massachusetts State Colleges, (**Flynn et al**), covering meals served under **contract meal plans** and attempted to levy on funds of the Trustees in the possession of the State Treasurer. The Trustees sought an injunction against this levy, and were granted same in Superior Court, primarily based on the grounds that said Trustees were not "taxpayers", and the Commissioner appealed to the Appellate Court.

The agreement for dismissal was entered into on May 1, 1978, five days after the commission denied the abatement in this case.

Paragraph (3) of the agreement provided:
"The Commissioner of Corporations and Taxation waives any and all claims he may have concerning the assessment and collection of taxes on meals served, prior to January 1, 1978, to students at the state colleges under contract meals plans.
Dated: May 1, 1978.
Kenneth H. Tatarian
Mahoney, Hawkes & Goldings
500 Boylston Street.
Boston, MA 02116
Attorney for Plaintiffs-Appellees.
Andrew J. McElaney, Jr.
Assistant Attorney General

One Ashburton Place
Boston, MA 02108
727-1031
Attorney for
Defendants-Appellants."

The Board finds as a fact that the taxes assessed arose out of taxes on meals served prior to January 1, 1978 to students at a state college under a contract meal plan.

## OPINION

The only issue in this case is whether the appellant was subject to a tax on meals furnished students at a state college under contract meal plans.

The appellee argues that the appellant was not an agent of the college but was an independent contractor and enjoyed no exemption from the payment of a meals tax which the state college might have enjoyed. The appellee cites the language of the taxing statute and "Ruling 1975-1 Meals and Beverage Excise, Contract Charges for Meals and Beverages" promulgated by the Department of Corporations and Taxation. That ruling provided that "Under the meal and beverage excise imposed by c. 64B of the General Laws and addition thereto, the 8% tax is levied upon all charges for meals of $1 or more . . ." with exemptions of certain health institutions, churches, certain children's summer camps and certain aged. The ruling then stated:

"Therefore, meals or alcoholic beverages served by any other person or entity for which a taxable charge is made, on any basis whatsoever, are subject to tax. This includes any college, university, other educational or charitable institution (except as exempted above), whether public or private, providing meals or alcoholic beverages for which a taxable charge is made."

The appellee concedes that by virtue of an amendment to G.L. c. 64H in 1978, exemptions for meals furnished to college students were granted but that this exemption was effective as of July 1, 1978. Thus, the appellee reasoned that for the year 1975, the appellee's ruling was the law and

the appellant was subject to the tax.

The Board is of the opinion, however, that all the evidence, law and arguments offered by the appellee are undercut by the "Agreement For Dismissal of Appeal."

The language of the waiver is clear and unambiguous; the Board applied the waiver according to its plain terms and granted the abatement.

Our decision was promulgated November 6, 1981.

**APPELLATE TAX BOARD**
**John P. Mulvihill Chairman**

A true copy.
Attest: **Nancy L. Egan Asst. Clerk of the Board.**